Filed 5/1/23

# CERTIFIED FOR PUBLICATION

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| STARLIGHT CINEMAS, INC., et al., | B313518 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 20SMCV01181) |
| v. | |
| MASSACHUSETTS BAY INSURANCE COMPANY, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mark A. Young, Judge. Affirmed.

Shernoff Bidart Echeverria, William M. Shernoff and Travis M. Corby for Plaintiffs and Appellants.

Hayes, Scott, Bonino, Ellingson, Guslani, Simonson & Clause, Stephen M. Hayes, Charles E. Tillage; Greines, Martin, Stein & Richland, Laurie J. Hepler and Stefan C. Love for Defendant and Respondent.

———————————————

Starlight Cinemas, Inc., Akarakian Theaters, Inc., Arman Akarakian, and Daniel Akarakian (collectively, Starlight) appeal from a judgment entered in favor of defendant Massachusetts Bay Insurance Company (MBIC) after the trial court granted MBIC's motion for judgment on the pleadings without leave to amend. Starlight, which owns and operates movie theaters in Southern California, sued MBIC for breach of an insurance contract and bad faith denial of coverage after MBIC denied Starlight's claim for losses sustained when it was compelled by government orders to suspend operations during the COVID-19 pandemic.

Starlight contends a policy term providing coverage for lost business income due to a suspension of operations "caused by direct physical loss of or damage to property" can be reasonably construed to include loss of use of its theaters without any physical alteration to the property, and the trial court therefore erred in entering judgment for MBIC. We conclude Starlight has not alleged a covered loss because the policy language requires a physical alteration of the covered property, which was not alleged. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The Policy*

As alleged in the complaint, MBIC issued Starlight an "'all risk'" commercial property and general liability insurance policy

2

for a one-year period beginning August 19, 2019 (the policy).[1]  A copy of the policy was attached to Starlight's complaint.

The policy included coverage for loss of business income due to an interruption of operations (business interruption coverage).  Section A.1 of the "Business Income (and Extra Expense) Coverage Form" provided in relevant part, "We will pay for the actual loss of business income you sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration.'  The 'suspension' must be *caused by direct physical loss of or damage to property* at premises which are described in the declarations and for which a business income limit of insurance is shown in the declarations . . . ."  (Capitalization omitted and italics added.)  "Operations" were defined, in pertinent part, to mean "[y]our business activities occurring at the described premises . . . ."  "Suspension" was defined in part as "[t]he slowdown or cessation of your business activities."  The "period of restoration" was defined as the period beginning "72 hours after the time of direct physical loss or damage . . . [¶] . . . [¶] caused by or resulting from any covered cause of loss at the described premises" and ending on the earlier of "[t]he date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality" or "the date when business is resumed at a new permanent location."  (Capitalization omitted.)  A policy endorsement eliminated the 72-hour coverage delay, stating, "the period of restoration begins at the time of direct physical loss or damage . . . ."

---

[1]    Starlight Cinemas Inc., and Akarakian Theaters, Inc., were named as insureds on the policy, and Arman Akarakian and Daniel Akarakian were named as additional insureds.

3

The policy also included civil authority coverage. Section A.5 of the "Business Income (and Extra Expense) Coverage Form" provided that if "a covered cause of loss causes damage to property other than the property at the [insured] premises," MBIC would pay for lost business income and extra expenses "caused by action of a civil authority that prohibits access to the [insured] premises" under two conditions: if "[a]ccess to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage" and "[t]he action of the civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the covered cause of loss that caused the damage . . . ."

The policy included an endorsement entitled "Exclusion of Loss Due to Virus or Bacteria" (the virus exclusion) that provided in pertinent part, "We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness, or disease." (Capitalization omitted.)

B.    *The Complaint*

Starlight filed this action on September 1, 2020 against MBIC and Starlight's insurance broker, Maroevich, O'Shea & Coughlan Insurance Services, Inc. (Maroevich). The complaint alleged causes of action against MBIC for breach of contract and breach of the implied covenant of good faith and fair dealing. The complaint also alleged a cause of action against Maroevich for negligence in procuring the policy for Starlight.[2]

---

[2]    Maroevich is not a party to the appeal, and the claim against it has been stayed.

4

As alleged, Starlight owns and operates movie theaters across Southern California. On March 16, 2020, in response to the COVID-19 pandemic, the County of Los Angeles Department of Public Health issued an order prohibiting all indoor public and private gatherings and specifically ordering the closure of all theaters. Over the next few days, the counties of Orange and Riverside issued similar orders closing theaters. And on March 19 the Governor issued a statewide stay-at-home order banning public and private gatherings. As a result of these orders (collectively, the government orders), Starlight was required to close its theaters and cease business operations. These closures resulted in "a loss of functional use of [Starlight's] premises and an interruption of [its] business," and the government orders were the "predominant cause of the interruption of [Starlight's] business."

Starlight promptly submitted a claim to MBIC under the policy, which was then in force. As alleged, MBIC "did not conduct a fair, balanced and thorough investigation" of Starlight's claim. Instead, "[h]aving conducted no investigation whatsoever," MBIC (through its claims adjuster) denied the claim by letter dated April 27, 2020.[3] The denial letter recited several policy provisions and stated, "[o]ur investigation and discussion with you confirmed there were no direct physical damages sustained to your described premises or property." Business interruption coverage did not apply to Starlight's claim because the policy language "requires that there is direct physical loss or damage caused by a covered cause of loss, which results in a

---

[3]    A copy of the April 27, 2020 denial letter was attached to the complaint.

5

partial or complete shutdown of your business," and "[i]n this event, there was no direct physical damage to property at your premises that resulted in a shutdown from a covered loss." (Capitalization omitted.) Likewise, civil authority coverage did not apply because "there was no physical loss or damage to properties in your area from a covered cause of loss . . . ." (Capitalization omitted.) Further, "because the policy excludes coverage for loss or damage caused by or resulting from any virus, any loss you sustained is not a loss resulting from a covered loss[.]"

Starlight's first cause of action for breach of contract alleged it "sustained a loss when [its] movie theaters were required by the Government Orders to shut, and [Starlight] suffered a functional loss of [its] premises and a suspension of [its] business operations." This was a covered loss under the policy, and MBIC breached its contractual duty to pay the claim.[4] The second cause of action for breach of the implied covenant of good faith and fair dealing alleged MBIC engaged in bad faith by, among other things, "failing to conduct a prompt, fair, balanced and thorough investigation of [Starlight's] claim" and "failing to conduct an investigation to determine the efficient proximate cause" of Starlight's loss before denying the claim.

On October 2, 2020 MBIC answered the complaint with a general denial and asserted numerous affirmative defenses, including that the policy "afforded no coverage" or any coverage was barred by policy exclusions.

---

[4] The complaint did not expressly allege that the virus exclusion was inapplicable; it alleged, however, that "the [v]irus [e]xclusion does not refer to pandemics, and the [p]olicy nowhere mentions the term 'pandemic.'"

C.    *MBIC's Motion for Judgment on the Pleadings*

On December 11, 2020 MBIC filed a motion for judgment on the pleadings.  MBIC argued that under California law, the phrase "direct physical loss of or damage to property" in an insurance contract requires a physical alteration of the insured property, citing the holding in *MRI Healthcare Center of Glendale, Inc. v. State Farm General Ins. Co.* (2010) 187 Cal.App.4th 766 (*MRI Healthcare*).  MBIC relied on the language in *MRI Healthcare* that a "direct physical loss" as used in an insurance policy precludes business interruption coverage where "'the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property.'"  (*Id.* at p. 779.)  In basing its insurance claim on the government orders, Starlight alleged only a "loss of functional use" of its theaters, not any physical alteration.  Further, numerous federal district courts in California had dismissed claims by insureds over denial of coverage for lost income stemming from COVID-19 government closure orders after finding that identical policy language required a physical alteration of the insured property.  (See, e.g., *10E, LLC v. Travelers Indemnity Co.* (C.D.Cal. 2020) 483 F.Supp.3d 828, 835-836 ["[u]nder California law, losses from inability to use property do not amount to 'direct physical loss of or damage to property'"]; *Mark's Engine Co. No. 28 Restaurant, LLC v. Travelers Indemnity Co.* (C.D.Cal. 2020) 492 F.Supp.3d 1051, 1055 ["An insured cannot recover by attempting to artfully plead impairment to economically valuable use of property as physical loss or damage to property."].)

MBIC also argued Starlight could not allege entitlement to coverage under the civil authority provision because the policy

7

language required the action by the civil authority that caused the loss to be made in response to dangerous physical conditions resulting from damage to nearby property.  Further, even if Starlight were able to bring its claims within the scope of business income coverage, the virus exclusion precluded coverage because Starlight's loss was "'caused by or resulting from a[] virus.'"  Finally, Starlight's cause of action for breach of the implied covenant of good faith and fair dealing was derivative of its contract claim and failed because MBIC had good cause to deny coverage.

In its opposition Starlight argued (as it does on appeal) the policy does not define the terms "direct," "physical," "loss" or "damage," as used in the phrase "direct physical loss of or damage," rendering the phrase ambiguous, and therefore the language should be construed in favor of coverage to include a loss of use of property due to the government orders, even absent physical alteration of the property.  In addition, the virus exclusion was inapplicable because the government orders, not the COVID-19 virus, were the predominating proximate cause of Starlight's loss.  In fact, Starlight "never alleged that a 'virus or bacteria' caused [its] loss, or that the coronavirus was present at any of [its] locations."  Starlight did not address MBIC's argument the losses were not covered by the civil authority coverage.[5]

---

[5]     Starlight also does not address civil authority coverage on appeal, and therefore, the issue is forfeited.  (See *People v. Duff* (2014) 58 Cal.4th 527, 550, fn. 9, ["the claim is omitted from the opening brief and thus waived"]; *Quiles v. Parent* (2018) 28 Cal.App.5th 1000, 1013 ["'Failure to raise specific challenges in the trial court forfeits the claim on appeal.'"].)

8

After a hearing, on March 12, 2021 the trial court granted MBIC's motion without leave to amend.  Citing *MRI Healthcare, supra*, 187 Cal.App.4th at page 779, the court found the term "'direct physical loss'" was not ambiguous and not amenable to Starlight's proffered interpretation that it included loss of use without a "'distinct, demonstrable, physical alteration'" of the property.  Starlight "[did] not allege there was a physical alteration of the movie theaters or any other actual change," and therefore failed to state a claim for breach of contract or breach of the implied covenant of good faith and fair dealing.  The court observed that during oral argument, Starlight requested leave to amend the complaint because there might be evidence of physical alterations that would be covered by the policy.[6]  The court denied leave to amend "because, even if there was some degree of physical alteration, the cause of action would still be barred by the [v]irus [e]xclusion provision."  On March 30, 2021 the court entered judgment in favor of MBIC and awarded MBIC its costs in an amount to be determined.

Starlight timely appealed.

---

[6]     At the hearing, Starlight's attorney requested leave to amend the complaint because of the rapidly changing law surrounding COVID-19 pandemic-related insurance claims and the "possibility after we consult with our clients that maybe they did have to do some physical alteration as a result of the government order shutdown.  They may have to take out some seats to accommodate social distancing.  We just didn't inquire of our client about physical alteration because we were convinced that the loss of use of the premises is what is meant by loss— direct physical loss."

# DISCUSSION

### A. *Standard of Review*

"'A judgment on the pleadings in favor of the defendant is appropriate when the complaint fails to allege facts sufficient to state a cause of action. [Citation.] A motion for judgment on the pleadings is equivalent to a demurrer and is governed by the same de novo standard of review.'" (*People ex rel. Harris v. Pac Anchor Transportation, Inc.* (2014) 59 Cal.4th 772, 777; accord, *Ventura Coastal, LLC v. Occupational Safety and Health Appeals Bd.* (2020) 58 Cal.App.5th 1, 14.) "'"We treat the pleadings as admitting all of the material facts properly pleaded, but not any contentions, deductions or conclusions of fact or law contained therein."'" (*Tarin v. Lind* (2020) 47 Cal.App.5th 395, 403-404; accord, *Burd v. Barkley Court Reporters, Inc.* (2017) 17 Cal.App.5th 1037, 1042.) "'If a judgment on the pleadings is correct on any theory of law applicable to the case, we will affirm it regardless of the considerations used by the superior court to reach its conclusion.'" (*Environmental Health Advocates, Inc. v. Sream, Inc.* (2022) 83 Cal.App.5th 721, 729; accord, *Bucur v. Ahmad* (2016) 244 Cal.App.4th 175, 185.)

"'Denial of leave to amend after granting a motion for judgment on the pleadings is reviewed for abuse of discretion.'" (*Environmental Health Advocates, Inc. v. Sream, Inc., supra*, 83 Cal.App.5th at p. 729; accord, *Ott v. Alfa-Laval Agri, Inc.* (1995) 31 Cal.App.4th 1439, 1448.) An abuse of discretion occurs if "'there is a reasonable possibility that the defect can be cured by amendment.'" (*Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1100 [reviewing an order sustaining demurrer without leave to amend]; accord, *Ko v. Maxim Healthcare Services, Inc.* (2020)

10

58 Cal.App.5th 1144, 1150.) "The question whether the trial court 'abused its discretion' in denying leave to amend 'is open on appeal even though no request to amend such pleading was made.'" (*Sierra Palms Homeowners Assn. v. Metro Gold Line Foothill Extension Construction Authority* (2018) 19 Cal.App.5th 1127, 1132 [reviewing an order sustaining a demurrer].) "'"The plaintiff has the burden of proving that [an] amendment would cure the legal defect, and may [even] meet this burden [for the first time] on appeal."'" (*Sierra Palms*, at p. 1132; accord, *Ko*, at p. 1150; see *Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 971.)

B.      *Interpretation of Insurance Contracts*

"In general, interpretation of an insurance policy is a question of law that is decided under settled rules of contract interpretation." (*State of California v. Continental Ins. Co.* (2012) 55 Cal.4th 186, 194; accord, *Shusha, Inc. v. Century-National Ins. Company* (2022) 87 Cal.App.5th 250, 259, review granted February 28, 2023, S278614 (*Shusha*).) "The principles governing the interpretation of insurance policies in California are well settled. 'Our goal in construing insurance contracts, as with contracts generally, is to give effect to the parties' mutual intentions. [Citations.] "If contractual language is clear and explicit, it governs." [Citations.] If the terms are ambiguous [i.e., susceptible of more than one reasonable interpretation], we interpret them to protect "'the objectively reasonable expectations of the insured.'" [Citations.] Only if these rules do not resolve a claimed ambiguity do we resort to the rule that ambiguities are to be resolved against the insurer.'" (*Minkler v. Safeco Ins. Co. of America* (2010) 49 Cal.4th 315, 321; accord, *Yahoo Inc. v.*

11

*National Union Fire Ins. Co. etc.* (2022) 14 Cal.5th 58, 67; *Montrose Chemical Corp. of California v. Superior Court* (2020) 9 Cal.5th 215, 230; *Shusha*, at p. 259.)

"To further ensure that coverage conforms fully to the objectively reasonable expectations of the insured, . . . in cases of ambiguity, basic coverage provisions are construed broadly in favor of affording protection, but clauses setting forth specific exclusions from coverage are interpreted narrowly against the insurer.  The insured has the burden of establishing that a claim, unless specifically excluded, is within basic coverage, while the insurer has the burden of establishing that a specific exclusion applies." (*Minkler v. Safeco Ins. Co. of America, supra*, 49 Cal.4th at p. 322; accord, *Montrose Chemical Corp. of California v. Superior Court, supra*, 9 Cal.5th at p. 230.)

C.    *Insurance Coverage for Business Losses Due to Pandemic-related Government Orders*

At the time the trial court granted MBIC's motion, no California appellate court had addressed whether business income losses caused by government orders issued in response to the COVID-19 pandemic were covered by commercial property insurance.  Multiple California appellate courts have now addressed this question.  Although the courts have reached different conclusions regarding the sufficiency of the insureds' allegations of covered losses, all but one have held the policy language "physical loss of or damage to property" requires a physical alteration of the covered property.

In the first of these cases, *Inns-by-the-Sea v. California Mutual Ins. Co.* (2021) 71 Cal.App.5th 688 (*Inns-by-the-Sea*), a hotel operator sued its insurer over the denial of a claim for loss

12

of business income, alleging it ceased operations at its properties due to county health orders requiring residents to shelter in place and prohibiting nonessential travel.  (*Id.* at p. 693.)  Division One of the Fourth Appellate District affirmed the trial court's order sustaining the insurer's demurrer without leave to amend, concluding, as alleged, hotel operations were not suspended due to "'direct physical loss of or damage to'" the hotels, as required under the subject policy.  (*Id.* at pp. 699, 705.)  The court rejected the hotel operator's argument that its allegation of "'loss of use, function, and value of its property'" was sufficient for coverage regardless of whether the COVID-19 virus was physically present, concluding "[c]ase law and the language of the [p]olicy as a whole establish that the inability to use physical property to generate business income, standing on its own, does not amount to a ""suspension"' . . . caused by direct physical loss of" property within the ordinary and popular meaning of that phrase."  (*Id.* at p. 705.)

The *Inns-by-the-Sea* court reasoned that outside the context of the COVID-19 pandemic, "'[t]he requirement that the loss be "physical," given the ordinary definition of that term, is widely held to exclude alleged losses that are intangible or incorporeal and, thereby, to preclude any claim against the property insurer when the insured merely suffers *a detrimental economic impact* unaccompanied by a distinct, demonstrable, physical alteration of the property.'"  (*Inns-by-the-Sea, supra*, 71 Cal.App.5th at pp. 705-706, quoting 10A Couch on Insurance (3d ed. 2016) § 148:46, pp. 148-96 to 148-98.)  The *Inns-by-the-Sea* court also relied on *MRI Healthcare, supra*, 187 Cal.App.4th at pages 779 through 780, in which Division Eight of this district concluded the failure of an MRI machine to function, after it was "'ramped

13

down'" to enable a roof repair to address storm damage, was not a covered loss because "there was no 'distinct, demonstrable [or] physical alteration' of the MRI machine." Further, the policy's definition of a "'period of restoration'" as beginning "'when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality'" was "significant because it implies that the 'loss' or 'damage' that gives rise to [b]usiness [i]ncome coverage has a *physical* nature that can be *physically* fixed . . . ." (*Inns-by-the-Sea*, at p. 707.)

In *Musso & Frank Grill Co. v. Mitsui Sumitomo Ins. USA Inc.* (2022) 77 Cal.App.5th 753 (*Musso & Frank*), Division One of this district likewise held that a restaurant operator did not suffer "direct physical loss of or damage" to property as a result of the COVID-19 pandemic and related government orders. Affirming an order sustaining the insurer's demurrer to the complaint without leave to amend, the court cited *Inns-by-the-Sea* and several federal court decisions, including a Ninth Circuit decision applying California law in *Mudpie, Inc. v. Travelers Casualty Insurance Company of America* (9th Cir. 2021) 15 F.4th 885, 894 (*Mudpie*), and concluded, "there is no real dispute" that "[u]nder California law, a business interruption policy that covers physical loss and damages does not provide coverage for losses incurred by reason of the COVID-19 pandemic.'" (*Musso & Frank*, *supra*, 77 Cal.App.5th at p. 760.) Division Four of this district reached the same conclusion in *United Talent Agency v. Vigilant Ins. Co.* (2022) 77 Cal.App.5th 821 (*United Talent*), explaining, "It is now widely established that temporary loss of *use* of a property due to pandemic-related closure orders, without more, does not constitute direct physical loss or damage." (*Id.* at pp. 830-831; see *id.* at p. 833 ["As the

14

trial court observed in sustaining the demurrer, [the plaintiff's] alleged loss 'was not a physical deprivation of property, but rather an interruption in business operations.'"].)

We first considered a coverage dispute arising from the COVID-19 pandemic in *Marina Pacific Hotel & Suites, LLC v. Fireman's Fund Insurance Company* (2022) 81 Cal.App.5th 96 (*Marina Pacific*). In that case, a hotel operator alleged the presence of the COVID-19 virus on the insured's premises caused physical damage to its property, which in turn led to covered losses. (*Id.* at p. 110.) Reversing the trial court's order sustaining the insurer's demurrer without leave to amend, we assumed for purposes of our opinion (but did not decide) that the undefined policy term "direct physical loss or damage" meant there must be an external force that acted on the insured property causing a "distinct, demonstrable, physical alteration of the property," as stated in *MRI Healthcare, supra,* 187 Cal.App.4th 766. (*Marina Pacific*, at p. 108.) We concluded the hotel's complaint adequately alleged physical alteration of the premises, explaining, "Assuming, as we must, the truth of those allegations, even if improbable, absent judicially noticed facts irrefutably contradicting them, the insureds have unquestionably pleaded direct physical loss or damage to covered property within the definition articulated in *MRI Healthcare*—a distinct, demonstrable, physical alteration of the property." (*Marina Pacific*, at p. 109.) We distinguished *Inns-by-the-Sea, supra,* 71 Cal.App.5th at page 703 and *Musso & Frank, supra,* 77 Cal.App.5th at page 759 on the basis that both cases involved only allegations of loss of use of the insured property as a result of government-ordered closures to limit the spread of COVID-19, "rather than, as expressly alleged here, a claim the presence of

15

the virus on the insured premises caused physical damage to covered property, which in turn led to business losses." (*Marina Pacific*, at p. 110.)[7] We reached a similar conclusion in *Shusha, supra*, 87 Cal.App.5th at page 266, review granted, holding that a restaurant's allegations that it suspended operations due to both physical alteration of its premises by the presence of the COVID-19 virus and government closure orders were sufficient to survive a demurrer. As in *Marina Pacific*, our analysis assumed but did not decide that under California law the policy term "direct physical loss of or damage to property" required a physical alteration of the property to trigger business income coverage. (*Shusha*, at p. 261.)

In *Apple Annie, LLC v. Oregon Mutual Ins. Co.* (2022) 82 Cal.App.5th 919 (*Apple Annie*), Division Two of the First Appellate District reviewed *Inns-by-the-Sea, Musso & Frank, United Talent,* and *Marina Pacific* in considering whether a restaurant had stated a claim for insurance coverage based on its allegation that a suspension of operations due to county shelter-at-home orders constituted a covered loss. Affirming a judgment on the pleadings in favor of the insurer, the court concluded, "[W]e cannot agree with Apple Annie's primary contention that the policy language—'direct physical loss or damage to,' including its disjunctive phrasing—is ambiguous and 'subject to a reasonable construction that supports coverage.' Doing so, we reject what may be the two most consequential aspects of Apple

---

[7] Unlike the claims at issue in *Inns-by-the-Sea* and *Musso & Frank* (and the claim here), the hotel operator in *Marina Pacific* did not seek coverage for loss of temporary use of its property due to the pandemic-related closure orders. (*Marina Pacific, supra,* 81 Cal.App.5th at p. 111, fn. 13.)

16

Annie's position: (1) that 'no physical alteration is necessary to show that the policyholder has suffered a "physical loss of" insured property if the governmental authorities issue orders that prohibit the policyholder from using the insured property for its intended purpose,' and (2) that '"physical loss of" includes the loss of use of the insured property, even if that loss is temporary.'" (*Apple Annie*, at p. 935.) A few weeks later, in *Tarrar Enterprises, Inc. v. Associated Indemnity Corp.* (2022) 83 Cal.App.5th 685, 687, the same court rejected an insured's argument that county shelter-in-place orders forcing him to close his office caused direct physical loss of or damage to his property. However, the court reversed the trial court order sustaining the insurer's demurrer without leave to amend because the insured's appellate brief set forth proposed amendments with some detail. (*Id.* at pp. 688-689.)

Most recently, Division Three of the Fourth Appellate District decided in *Coast Restaurant Group, Inc. v. Amguard Ins. Co.* (April 10, 2023, G061040) __ Cal.App.5th __ [2023 Cal.App. Lexis 269, at pp. *1-2] (*Coast*) that business interruption insurance potentially provided coverage for a restaurant's losses as a result of the government closure orders issued in response to the COVID-19 virus. However, the court affirmed the trial court's order sustaining the insurance company's demurrer on the basis a virus exclusion precluded coverage as a matter of law. (*Ibid.*) The restaurant alleged in its amended complaint that the government closure orders forced the restaurant '"to shut its doors for in person dining and resulted in a loss of functional use of its premises and an interruption of its business.'" (*Id.* at *3.) The insurance policy attached to the amended complaint provided coverage for loss of income sustained as a result of

17

suspension of operations "''caused by direct physical loss of or damage to property at the described premises.'''" (*Id*. at *4.) Further, the policy paid for losses incurred during a "''period of restoration,'''" which was defined as the period beginning 72 hours after the "'direct physical loss or damage'" and ending on the earlier of when the property was repaired, rebuilt, or replaced, or "'[t]he date when business is resumed at a new permanent location.'" (*Id*. at *4-5.) The policy also contained an exclusion for loss or damage caused by "'[t]he enforcement of any ordinance or law . . . [r]egulating the construction, use or repair of any property'" and any virus that "'is capable of inducing physical distress, illness or disease.'" (*Id*. at *5.)

  The Court of Appeal in *Coast* concluded the restaurant "suffered a covered loss under the policy because the governmental restrictions . . . deprived the appellant of important property rights in the covered property." (*Coast, supra*, __ Cal.App.5th at p. __ [2023 Cal.App. Lexis 269 at p. *12].) The court explained the government orders "physically affected the property because they affected how the physical space of the property and the physical objects (chairs, tables, etc.) in that space could or could not be used." (*Ibid*.) In reaching its conclusion, the court relied on *American Alternative Ins. Corp. v. Superior Court* (2006) 135 Cal.App.4th 1239, 1246 (*American Alternative*). (*Coast*, at pp. __ - __ [2023 Cal.App. Lexis 269 pp. *12-13].) In *American Alternative*, the Court of Appeal affirmed the grant of summary adjudication in favor of the owners of an airplane on their claim against their insurers for reimbursement of expenses incurred in recovering possession of the airplane after the sheriff seized it as part of a civil forfeiture action. (*American Alternative*, at pp. 1242-1243.) The aviation

18

insurance policy at issue stated the insurer "'shall pay for physical damage to the scheduled aircraft including disappearance of the scheduled aircraft.' . . . '"Physical damage" means direct and accidental physical loss of or damage to the scheduled aircraft.'" (*Ibid.*, italics omitted.) The *American Alternative* court held coverage was available based on the term "'physical damage'" because "[o]n its face, such a coverage promise could reasonably extend to governmental seizure or confiscation." (*Id.* at p. 1246, italics omitted.) The *Coast* court concluded that, as in *American Alternative*, the COVID-19 government closure orders "temporarily deprived appellant of its right to use the covered property for on-site dining, which would be a 'loss' under the coverage provisions." (*Coast*, at p. __ [2023 Cal.App. Lexis 269 at p. *13].)

The Supreme Court has now granted review in the most recent published decision addressing the sufficiency of allegations that losses arising from pandemic-related closure orders are covered by business income coverage, *John's Grill, Inc. v. The Hartford Financial Services Group, Inc.* (2022) 86 Cal.App.5th 1195, review granted March 29, 2023, S278481.[8]

---

[8] The Supreme Court also recently granted requests for certification by the Ninth Circuit on two questions of California law: First, "Can the actual or potential presence of the COVID-19 virus on an insured's premises constitute 'direct physical loss or damage to property' for purposes of coverage under a commercial property insurance policy?" (*Another Planet Entertainment, LLC v. Vigilant Insurance Company* (9th Cir. 2022) 56 F.4th 730, request for certification granted Mar. 1, 2023, S277893); second, "Is the virus exclusion in [the restaurant's] insurance policy unenforceable because enforcing it would render

19

In *John's Grill*, Division Four of the First Appellate District observed as to prior business loss coverage cases that "a nearly uniform line of cases in California and across the country holds that temporary loss of use of property due to the COVID-19 pandemic does not constitute 'direct physical loss of or damage to' property for purposes of first party insurance coverage." (*Id.* at p. 1201.) However, the court reversed the order sustaining the demurrer to the restaurant's claim for wrongful denial of coverage, explaining that, in contrast to the prior COVID-19 business interruption cases, the policy at issue specifically provided coverage "for loss or damage by . . . virus," including the cost to remove the virus. (*Id.* at p. 1214.) And, the court noted, a special definition in the policy clarified that "'[d]irect physical loss or direct physical damage to' property can be 'caused by' 'virus . . . .'" (*Ibid.*) The court concluded, "Because the . . . Virus Coverage Endorsement contains an additional affirmative grant of coverage, and because there is a special definition of 'loss or

_____

illusory a limited virus coverage provision allowing for the possibility of coverage for business losses and extra expenses allegedly caused by the presence and impacts of COVID-19 at an insured's properties, including the loss of business due to a civil authority closure order?" (*French Laundry Partners, LP v. Hartford Fire Insurance Company* (9th Cir. 2023) 58 F.4th 1305, 1307, request for certification granted Mar. 29, 2023, S278492.) And, as noted, the Supreme Court has granted review in *Shusha, supra,* 87 Cal.App.5th at page 266, in which we concluded a restaurant adequately alleged it had suffered direct physical loss or damage to its property caused by the COVID-19 virus to withstand a demurrer.

damage' in the triggering clause for that additional coverage, we cannot simply import the reasoning of the *Mudpie* line of cases." (*Id.* at p. 1218.)

D.      *The Trial Court Properly Entered Judgment on the Pleadings*

Starlight's complaint alleged it was forced to suspend business operations due to government orders in response to the COVID-19 pandemic, resulting in "a loss of the functional use" of its theaters, or, as alternatively alleged, "a functional loss" of its property.  Starlight did not allege that the COVID-19 virus was present in its theaters or that there was any physical alteration of its property as a result of either the virus or the government orders.  As discussed, most California appellate courts have held the allegation of temporary loss of use of property resulting from pandemic-related government closure orders—without any physical loss of the property—is not sufficient to support a claim against an insurer for business income coverage under a policy that requires the suspension be caused by "direct physical loss of or damage to" insured property.  (*Apple Annie, supra*, 82 Cal.App.5th 919; *United Talent, supra*, 77 Cal.App.5th 821; *Musso & Frank, supra*, 77 Cal.App.5th 753; *Inns-by-the-Sea, supra*, 71 Cal.App.5th 688; but see *Coast, supra*, __ Cal.App.5th at pp. __ - __ [2023 Cal.App. Lexis 269 at pp. *1-2, 13].)  We too previously assumed without deciding that this policy language meant the insured needed to allege an external force acted on the insured property causing a "distinct, demonstrable, physical alteration of the property," as stated in *MRI Healthcare, supra,* 187 Cal.App.4th 766.  (*Marina Pacific, supra*, 81 Cal.App.5th, at p. 108; see *Shusha, supra*, 87 Cal.App.5th at p. 261, review

21

granted.)  Now that we are presented with the question of interpretation of the "direct physical loss" language in an insurance policy, we conclude, consistent with the reasoning in the "now-existing wall of precedent" (other than *Coast*) that the policy language requires a physical alteration of the covered property.  (See *Apple Annie*, at p. 935.)

We disagree with our colleagues in *Coast, supra*, __ Cal.App.5th at p. __ [2023 Cal.App. Lexis 269, at p. *13] that a temporary deprivation of an insured's right to use covered property constitutes a covered loss under policy language covering a "direct physical loss of or damage to property."  *Coast*'s reliance on *American Alternative* to support this argument is misplaced.  Although *American Alternative* involved policy language similar to the one at issue here and in *Coast*, the loss of use of the property due to seizure resulted in the aircraft owners losing their physical possession of the property.  By contrast, here and in *Coast*, there were no allegations the government physically dispossessed the insureds of their property; rather, the government closure orders prohibited the insureds from operating—that is, *using*—their property for a business purpose.[9]  As MBIC points out, if a Starlight manager had left a film

---

[9]     The Court of Appeal in *Coast, supra*, __ Cal.App.5th at pp. __ to __ [2023 Cal.App. Lexis 269 at pages *15 to 16] rejected the argument that *American Alternative* was distinguishable on the basis the insured in that case lost actual possession of the airplane, explaining the policy did "not distinguish between a partial loss or a total loss."  The policy here likewise does not specifically require a total loss of use of the property, but we read the coverage language requiring a "direct physical loss of" the property to require a "physical loss" of the property, not just a loss of use of the property, partial or otherwise.

projector on, she could go into the theater to turn the projector off, or to retrieve her personal property (even potentially to show a movie to her family). As MBIC contends, the government orders "would have posed no physical impediment to these activities, and probably not even a legal impediment."[10]

Starlight contends that because the words "physical loss of or damage to" are phrased in the disjunctive, "loss of" and "damage to" must each have a separate meaning. But this argument ignores the word "physical," which modifies the phrase "loss of." As the court explained in *Apple Annie,* "[E]ven if there were any distinction between loss and damage, it would become relevant only after detriment has been caused by a 'direct physical' cause, which is not alleged here. [Citations.] [¶] This construction comports not only with the plain meaning rule, but also with the principle that courts will not strain to create an ambiguity that can be construed against the insurer." (*Apple Annie, supra*, 82 Cal.App.5th at pp. 929-930, footnote omitted.)

Starlight also argues we should not follow *Inns-by-the-Sea, supra*, 71 Cal.App.5th at pages 586 to 587 and *MRI Healthcare, supra*, 187 Cal.App.4th at page 779 because both courts gave undue weight to the Couch on Insurance treatise in holding direct physical loss of or damage to property requires a material

---

[10] The district court in *10E, LLC v. Travelers Indemnity Co. of Connecticut, supra*, 483 F.Supp.3d at page 836 rejected a similar argument that under California law "'loss,' unlike 'damage,' encompasses temporary impaired use." The court explained that even if the policy covered permanent dispossession, the plaintiff restaurant's allegations were insufficient because the COVID-19 public health orders imposed limitations on use of the dining room, but the plaintiff remained in possession. (*Ibid.*)

23

alteration of the property.[11]  Starlight cites a recent law journal article[12] criticizing Couch's interpretation of the policy language on the basis Couch relied on only five cases that concluded there was a physical-alteration requirement (and two that did not), yet it claimed this was a "'widely held'" view.  Starlight argues a different "well-respected" insurance treatise (Windt, Insurance Claims and Disputes (6th ed. 2013) §§ 11:40-11:41) construed the same language and concluded "the 'loss of property' requirement can be satisfied by any 'detriment,' and a 'detriment' can be present without there having been a physical alteration of the object."  Regardless of the reasoning underlying the Couch treatise's analysis, "[a]t this point in time, any analytical flaws in the Couch formulation have become largely academic in light of the now-existing wall of precedent . . . .  When originally published, the Couch formulation may not have reflected widespread acceptance by the courts, but such acceptance has now been achieved."  (*Apple Annie, supra*, 82 Cal.App.5th at p. 935.)

---

[11]     Starlight also attempts to distinguish *MRI Healthcare, supra*, 187 Cal.App.4th at page 771 on the basis the insurance policy at issue covered loss *to* property instead of loss *of* property, arguing the former language "connotes some physical alteration of the property," while the latter refers to interference with a possessory interest.  However, the *MRI Healthcare* holding made no such distinction, instead focusing on the fact coverage was provided only for a direct "physical" loss, which the court concluded contemplated an actual change in the property.  (*Id.* at p. 779.)

[12]     Richard P. Lewis et. al., *Couch's "Physical Alteration" Fallacy: Its Origins and Consequences* (2021) 56 Tort Trial & Ins. Prac. L.J. 621.

24

Finally, Starlight argues the court in *Inns-by-the-Sea,
supra*, 71 Cal.App.5th at page 708 relied too heavily on the
definition of "period of restoration," as the period when the
property "should be repaired, rebuilt or replaced with reasonable
speed and similar quality," to justify its holding that physical loss
of or damage to property requires a physical alteration. Starlight
contends it is unrealistic to expect all provisions of a lengthy
insurance policy to operate seamlessly, and the *Inns-by-the-Sea*
court conflated the terms "'physical . . . damage to'" and "'physical
loss of'" to avoid rendering the language defining "'period of
restoration'" superfluous. Although the policy is 230 pages long,
the phrase "period of restoration" is used in the business
interruption coverage section, with the phrase clearly defined
only eight pages later in the "Definitions" section. The definition
of "period of restoration," by recognizing there will be a period of
physical repair to the property, is, at a minimum, consistent with
requirement of a physical alteration to trigger a covered loss.[13]

---

[13] Because Starlight failed to allege a covered loss to support
its breach of contract cause of action, it does not state a claim for
bad faith denial of coverage. (*Musso & Frank, supra*,
77 Cal.App.5th at p. 761 ["Because Musso & Frank cannot
establish a breach of contract, it follows necessarily that it cannot
prove a breach of the covenant of good faith and fair dealing."];
*United Talent, supra*, 77 Cal.App.5th at p. 841; see *Waller v.
Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 36 ["if there is no
*potential* for coverage . . . , there can be no action for breach of the
implied covenant of good faith and fair dealing because the
covenant is based on the contractual relationship between the
insured and the insurer"].)

Further, because the policy did not provide coverage for
loss of use absent a physical alteration, we do not reach whether

25

## DISPOSITION

The judgment is affirmed.  MBIC is to recover its costs on appeal.

FEUER, J.

We concur:


SEGAL, Acting P.J.


ESCALANTE, J.*

---

the virus exclusion excluded coverage.  (See *Apple Annie, supra,* 82 Cal.App.5th at p. 924, fn. 2 ["It is black-letter insurance law that exclusions are only considered after it is established that coverage exists under the policy"].)  Likewise, because Starlight only seeks leave to amend to avoid the virus exclusion (arguing in its opening brief that if it were granted leave to amend it "could have clarified in its complaint that it only closed because of the Government Orders, not because of any virus or related prophylactic measures"), it has not met its burden to support leave to amend.  (*Sierra Palms Homeowners Assn. v. Metro Gold Line Foothill Extension Construction Authority, supra,* 19 Cal.App.5th at p. 1132.)

* Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.